194          McKAY v. CALDERWOOD.

[No. 5029. Decided February 23, 1905.]

JAMES McKAY, *Respondent*, v. DAVID CALDERWOOD, *Appellant*.[1]

PLEADINGS—COMPLAINT—DEMURRER—LAW OR EQUITY. A demurrer to a complaint asking equitable relief, for want of facts to state a cause in equity, is properly overruled if the complaint states a cause of action upon any theory.

SPECIFIC PERFORMANCE—COMPLAINT—SUFFICIENCY—VENDOR AND PURCHASER—FRAUDS, STATUTE OF—PART PERFORMANCE OF ORAL SALE. A complaint for the specific performance of an oral sale of land states a good cause of action in equity where it is alleged that plaintiff entered into the possession of land under an agreement for a half interest, paid part of the purchase price by discharging outstanding claims, expended labor thereon for a term of years, adding valuable improvements thereto, paid out money to release obligations against the land, and tendered the balance of the purchase price, since the elements of a constructive fraud are present in such part performance; and especially where it is alleged that the defendant is insolvent, since the plaintiff could not be replaced in his original position or adequately compensated in damages.

FRAUDS, STATUTE OF—VENDOR AND PURCHASER—PART PERFORMANCE OF ORAL SALE—POSSESSION. The taking of a joint or divided possession, under an oral contract for the sale of an undivided one half interest in lands, is a sufficient part performance to take the same out of the operation of the statute of frauds, when coupled with payment of the purchase price, or the making of valuable improvements; nor is possession always a necessary element of part performance.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered August 11, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, decreeing the specific performance of a contract for the sale of land. Affirmed.

*E. S. Avey* and *Israel & Mackay*, for appellant.

*W. H. Abel*, for respondent.

1Reported in 79 Pac. 629.

DUNBAR, J.—An action to enforce specific performance for the sale of land, based upon an oral contract. The complaint, omitting the formal part, is as follows:

"(1) That on or about November 26th, 1900, the defendant was the owner of the following described real estate situate in Chehalis county, Washington: [Description.] That on said date the plaintiff and defendant entered into an agreement by parol, wherein and whereby it was mutually agreed that plaintiff should enter into possession of said premises jointly with the defendant, and should have and own an undivided one-half interest therein, and be the owner in fee simple of such interest, which interest the defendant agreed to convey to plaintiff in consideration of the payment to the defendant of the sum of $1,000, and the further payment of the sum of $500, or such amount as was then due or thereafter due upon a certain mortgage upon said premises in said sum of $500 and interest, then owned by one Palmer; and as a part consideration the plaintiff was to, and he agreed to, satisfy and discharge, and he did satisfy and discharge, all outstanding claims and obligations owing to him by said Calderwood. That said outstanding claims and obligations were owing by said Calderwood to this plaintiff, on account of work and labor performed by plaintiff, at defendant's instance and request, upon the said land; that said labor consisted in clearing about eight acres of said land, and cutting the timber upon about twelve acres of said land, and assisting defendant in grubbing about three acres of said land; that said work was performed from time to time during the period of five years next prior to said agreement, and the reasonable value of said services was and is the sum of $650.

"(2) That thereafter, pursuant to said agreement, this plaintiff entered into the possession of said lands jointly with the defendant, and ever since has been and still is in possession of said lands, under said agreement, as the owner of an undivided one-half interest; that, after entering into the possession of said lands, this plaintiff, with the knowledge and consent of the defendant, made numerous valu-

able permanent improvements upon ᴛᴴᴇ said lands; that, at the time of entering into said contract, said lands consisted mainly of unenclosed wild lands, covered with timber and underbrush, and that the same was of no value for agricultural purposes; that, upon making said contract and prior thereto, this plaintiff commenced to and ever since has cleared, cultivated and reduced said lands to cultivation and has greatly increased the amount of land in cultivation on said premises; that the value of his said improvements is the sum of $1,085; that he has never been paid any sum whatsoever for said improvements.

"(3)    That thereafter, and on or about February 1st, 1902, it was mutually agreed that the said $500 mortgage, with interest due, should be taken up and said Calderwood execute a new mortgage upon said lands to one Malone for the amount due on said other mortgage, payable one year after date, and that said plaintiff should pay said mortgage at or before maturity, and it was further agreed between these parties that said $1,000 should be paid at such time as defendant desired, and that he should be allowed interest on the said $1,000, from the date of the original agreement at the rate of 6 per cent per annum; that in pursuance of said agreements the plaintiff, prior to the commencement of this action, fully paid the said Malone mortgage, the amount paid by him being the sum of $594.

"(4)    That, at all times since the making of said agreements, this plaintiff has been ready, willing and able to pay the said sum of $1,000, with said interest; that, prior to the commencement of this action, this plaintiff tendered to the defendant said sum of $1,000, with interest at 6 per cent per annum from the date of said original agreement, and tendered to the defendant the said Malone note and mortgage, paid by plaintiff as aforesaid, and demanded of the defendant that he execute to plaintiff a deed, conveying to plaintiff an undivided one-half interest in the lands above described; that said defendant refused said tender and refused to execute said deed, and then and still does refuse to comply with said contract upon his part; that at

all times since the entering into said original contract this plaintiff has paid more than one-half of the taxes assessed against said lands.

"(5)   That the defendant and the plaintiff are each single men; that the defendant has no other property or means of value, and a judgment against him could not be collected by process of law, unless the lands above described are subjected to the payment thereof; that the plaintiff has no plain, speedy or adequate remedy at law; that plaintiff is ready, willing and able to perform all the obligations of said contract upon his part, and herewith tenders his willingness to perform any lawful conditions adjudged by the court to be performed by him.

"Wherefore plaintiff prays judgment that the contract between these parties be established and adjudged valid, and that the defendant be required to execute proper conveyance, conveying to this plaintiff an undivided one-half interest in said lands, according to the terms of the said contract, and that this plaintiff be adjudged to be the full equitable owner of such an undivided one-half interest, and that defendant be required to accept said tenders, and fully perform said contract in all respects, and for such other and further relief as to the court may seem equitable, including costs."

The defendant demurred to the complaint upon the ground that it failed to state a cause of action. This demurrer was overruled by the court; whereupon appellant answered, by both denial and affirmative allegation; and, respondent having replied, the cause went to trial, findings of fact were made by the court, the issues were decided in favor of the plaintiff, and judgment was entered substantially in compliance with the prayer of the complaint. From such judgment this appeal is taken.

It is the contention of the appellant that the trial court should have sustained the appellant's demurrer to the complaint; that the pleadings sought to set forth facts which, under our practice, were not sufficient to invoke the equity

jurisdiction of the court, and that the petition should have been dismissed. The complaint in this action could not have been dismissed, in any event, under the uniform rulings of this court, there having been a cause of action stated in the complaint, even though the complaint did not set forth facts to warrant equitable interference on the part of the court. We have frequently decided, in principle, that, under the provisions of the code, litigants cannot be expelled from the court at one door under the burden of accumulated costs, with the admonition to enter the court at another door with another accumulation of costs; but that, whatever rights the plaintiff has under the complaint, conceding its allegations to be true, will be tried out by the court, and the proper judgment in the cause rendered. But we think unhesitatingly that this complaint states a cause of action in equity. It is true that it is an attempt to enforce specific performance of a contract which is void in law, through the equitable doctrine of part performance. It is also true, as is stated by Judge Pomeroy in his work on Contracts, as quoted on page 21 of appellant's brief, that:

"In every case where the doctrine of part performance has been applied, the elements of a constructive fraud will be found to exist, and in the absence of these elements equity always refuses to interfere. There must be acts of such a nature that the plaintiff cannot be replaced in his original position or adequately compensated in damages."

In short, it may be conceded that, where part performance is relied upon to take a parol agreement for the sale of land out of the statute of frauds, the burden is imposed upon the party pleading the part performance to show acts unequivocally referring to, and resulting from, that agreement—acts such as would not have been done unless with a direct view to the performance of that very agreement. But, testing the complaint by these rules, we think it is

sufficient. Certainly the element of a constructive fraud is found in the allegations of the complaint. The plaintiff, under a fair agreement, entered into the possession of the land, expended his labor thereon for a term of years, paid out his money for the purpose of releasing obligations against the land; and, if the allegation of the complaint is true that a judgment against the defendant could not be collected by process of law, then the other condition mentioned by the learned author above quoted obtains, because the plaintiff cannot be replaced in his original position, or adequately compensated in damages.

It is contended by the appellant that the possession shown in this case was not sufficient possession to justify the interference of a court of equity, or to constitute a part performance of the contract, sufficient to relieve the contract from the operation of the statute of frauds. Possession, under the authorities, is not always a necessary element to constitute part performance. The rule is laid down by Mr. Pomeroy, in § 117, as follows:

"It has been said, in some judicial decisions, that possession is an indispensable element in the part performance of a verbal contract for the sale of land—in other words, that the part performance of such a contract is impossible without a change of possession; but this conclusion is clearly incorrect. Many other acts, without a possession, fully satisfy all the requisites of a part performance. It is not essential that the contract should expressly stipulate for the delivery of possession. If the possession is taken in pursuance and execution of the agreement and with the knowledge of the vendor, it is a good part performance, although the contract be silent in respect to it. As possession alone is sufficient, *a fortiori,* possession delivered by the vendor, or taken with his knowledge and consent, when accompanied by other acts on the part of the plaintiff, constitutes a part performance of the most effectual and conclusive character; as possession and payment of the pur-

chase-price in whole or in part; or possession and the making of valuable improvements on the land."

The same author, in § 126, in speaking of another branch of this case which is involved in the allegation of improvements having been made upon the land by the plaintiff, says:

"The making of valuable improvements on the land by a vendee or lessee, in pursuance of the agreement, and with the knowledge of the other party, is always considered to be the strongest and most unequivocal act of part performance by which a verbal contract to sell and convey, or to lease, is taken out of the statute. It is very plain that such proceedings satisfy the equitable principle upon which the doctrine of part performance rests, much more completely than a mere possession does."

And the universal rule is that possession and the making of permanent improvements is sufficient to invoke equitable aid. Neither is there anything in appellant's contention that the possession alleged in the complaint was not a sufficient possession because it was a joint possession, and the authorities cited are not at all in point. Of course, the vendee, under a parol contract calling for the entire fee, may not rely upon a joint possession, or a divided possession; but in this case the contract was only for an undivided interest in the real estate, and no authorities, we think, would hold the vendee to a possession which was absolutely unqualified and undivided, and which he would not have a right to under his contract.

We think there was a sufficient demand, as shown by the whole record, and, upon the questions of fact, a perusal of the record satisfies us that the facts found by the court were justified by the testimony, and that the judgment properly followed such findings of fact. It is therefore affirmed.

Mount, C. J., Fullerton, and Hadley, JJ., concur.

Rudkin, Root, and Crow, JJ., took no part.