Oline Skjelvaag, a daughter of Ole J. Tveekrem, deceased, and Olaf P. Shelvog, a nephew, are rival claimants to the estate of the deceased. The daughter claims by reason of heirship, and the nephew bases his claim upon an instrument in writing. The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that the nephew's claim should be sustained, and an order was entered allowing him the sum of $3,200 out of the estate, from which the daughter appeals.
The facts, as found by the trial court and which are supported by the record, may be summarized as follows: Ole J. Tveekrem died intestate January 27, 1930. Olaf P. Shelvog was thereafter appointed and qualified as administrator of his estate. The only heirs of the deceased were Oline Skjelvaag, a daughter, and Shelvog, the nephew. At the time of his death, the deceased left an estate valued at approximately $4,250, consisting principally of cash and a small tract of real estate of the appraised value of two hundred dollars.
The deceased, during the latter years of his lifetime, had a fear of becoming incapacitated and being unable to take care of himself. He had no other relatives, except the nephew, to whom he could look for assistance in case of need. December 18, 1924, the deceased, at Port Blakely, wrote the following letter to his nephew:
"Dear Nephew Olaf:
"I have recently received your honored letter and am very glad to see that you have now fully decided that you will take care of me and assist me, if I should get sick or in any way need help. *Page 470 
"I will now fix it so that when I pass away, then everything I leave shall belong to you, whether I need your help or not. . . .
"Your uncle (father's brother) Ole."
The deceased, subsequent to the date of the letter, on numerous occasions orally confirmed the agreement between himself and nephew by statements made to neighbors and friends. The nephew performed certain work and gave certain care to the uncle after the date of the agreement and up to the time of his death, but the services so performed cannot be considered a part performance of the contract. The uncle, prior to his death, had failed to make a will.
The daughter is a resident of Norway, and no family relation had ever existed between her and her father, nor had they ever seen each other. Shortly after the deceased and the daughter's mother were married, the deceased left Norway, and after he came to this country, obtained a divorce.
The question to be determined is whether the writing above set out is sufficient to satisfy the requirements of the statute of frauds.
[1] Rem. Comp. Stat., § 5825, provides that, in certain specified cases, any agreement, contract or promise shall be void unless some note or memorandum thereof be in writing and signed by the party to be charged therewith. A writing sufficient to satisfy the requirements of the statute was necessary to support the nephew's claim. In re Edwall's Estate, 75 Wn. 391,134 P. 1041.
Looking to the writing, as above set out, it first recites that the deceased had received a letter from his nephew, and was glad to see that the nephew had "now fully decided that you will take care of me and assist me, if I should get sick or in any way need help." Here is a distinct recital that the nephew, in the letter which *Page 471 
he had written his uncle, had promised that, if the latter should get sick or need help, he would take care of him and assist him. In response to this promise on the part of the nephew, the deceased, in the letter, stated that he would "now fix it so that when I pass away, then everything I leave shall belong to you, whether I need your help or not." Here is a promise on the part of the uncle to so arrange his affairs that, when he passed away, everything would go to the nephew, which must have meant that he would make a will to that effect.
The writing was not a unilateral contract, because the promise of the nephew, as recited therein, was a consideration for the promise of the uncle. It is elementary, of course, that a promise for a promise is a sufficient consideration to support an executory contract. Brown v. Brew, 99 Wn. 560, 169 P. 992;Mowbray Pearson Co. v. Stanton Co., 109 Wn. 601,187 P. 370, 190 P. 330.
As appears from the writing, the promise of the nephew was contingent upon his uncle needing his care and assistance. But the fact that a promise given for a promise is dependent upon a condition does not affect its validity as a consideration. 13 C.J. 330; 1 Page on Law of Contracts, p. 956.
[2] The writing does not on its face identify the parties thereto, and extrinsic evidence was admissible to show the particular parties intended. 4 Page on Law of Contracts, p. 3847;Haskell v. Tukesbury, 92 Me. 551, 43 A. 500, 69 Am. St. 529;Sanborn v. Flagler, 9 Allen (Mass.) 474.
[3] A consideration for the promise of the uncle having appeared in the writing, any other consideration consistent with it could be averred and proved. Van Lehn v. Morse, 16 Wn. 219,47 P. 435; Roberts v. Stiltner, 101 Wn. 397,172 P. 738. *Page 472 
 [4] It is true that the writing upon which the claim of the nephew was based was not signed by him, but by the uncle alone; but this meets the requirements of the statute of frauds, because a signing by the party to be charged therewith was sufficient.Western Timber Co. v. Kalama River Lumber Co., 42 Wn. 620,85 P. 338, 114 Am. St. 137, 6 L.R.A. (N.S.) 397.
When the letter of the uncle is read and considered in the light of the rules of law above stated, which are supported by the authorities cited, we think it necessarily follows that the writing was sufficient to satisfy the requirements of the statute of frauds and therefore sustain the claim of the nephew.
The order appealed from will be affirmed.
TOLMAN, C.J., HOLCOMB, and BEALS, JJ., concur.