[No. 6864–4–I. · Division One.   February 19, 1980.]

GLEN FRIEDL, ET AL, *Respondents,* v. R. WAYNE
BENSON, ET AL, *Appellants.*

*Craig P. Hayes, Martha V. Gross,* and *McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes,* for appellants.

*John D. Pappas,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

In this breach of contract action, Glen Friedl and Gene Rorvig recovered verdicts against their former landlord, R. Wayne Benson, in the respective sums of $31,641 and $58,520.[1] The trial court ordered a new trial on the issue of damages unless Friedl and Rorvig would consent to accepting a $7,250 reduction in each of their judgments. Benson appeals from the verdicts and judgments. Friedl and Rorvig cross–appeal from the order granting a new trial on damages unless they agreed to accept a reduction in the amount

---

[1]The judgment was against defendants, R. Wayne Benson, Jane Doe Benson, the marital community composed of the Bensons, Benson Development Company and the Quadron Company but, for convenience, we refer to Mr. Benson, with whom the negotiations took place, as though he is the sole defendant. Defendants Pacific Northwest Bell Telephone Company, Inc., and Does 1 through 5 are not parties to this appeal.

of their judgment, as well as from the trial court's refusal to submit a portion of their claim to the jury.

Benson owned a small office building in an outlying part of Bellingham. Friedl and Rorvig conducted an insurance agency business in a portion of the ground floor of the building and had a 5–year lease with an option to renew it for an additional 5 years. Benson had plans to build a new office building nearby.

Friedl and Rorvig claimed that they and Benson had agreed as follows: Friedl and Rorvig would vacate their leased space to make it available to a savings and loan association, a tenant Benson preferred, which would take over the entire first floor of the existing building; Friedl and Rorvig for a time would conduct their business at a much less desirable temporary office nearby; and then when Benson's new office building was completed, Friedl and Rorvig would get choice office space in it along with an option to purchase the new building. Friedl and Rorvig vacated the premises which the new tenant moved into and conducted their business in temporary quarters for some time and then, as they claim, Benson refused to go through with his part of the agreement. Friedl and Rorvig thereupon filed suit claiming substantial lost earnings as a consequence of Benson's breach of contract. Benson contended that the transaction amounted to negotiations only, did not constitute a contract, and that the statute of frauds barred Friedl's and Rorvig's claims.

The parties exchanged a number of proposed agreements. The following two documents, however, were the only ones signed by all of the parties.

We, _____ and _____, agree to rent from R. Wayne Benson, dba _____, approximately 850 square feet in the office building located at Lakeway and King Streets, Bellingham WA. The price per square foot will be at the prevailing rate, not to exceed $.65 net per square foot. A ten year lease will be signed with an additional ten year option to re-lease. There will also be a five year option to purchase

the building; price to be determined at completion of proposed building plus a cost of living increase until the option is exercised.

<u>/s/ Glen Friedl</u>

<u>/s/ Gene Rorvig</u>

<u>/s/ R. Wayne Benson</u>

DATED THIS _____ day of _____, 19__.

Plaintiffs' exhibit 6.

## OPTION TO LEASE

This agreement, made in duplicate this __1st__ day of __December__, 1976, is by and between _____R. Wayne Benson_____, herein called Optionor, and _____Glen Friedl and Gene Rorvig_____, herein called the Optionee. In consideration for _____∅_____ dollars ($ ∅ ), the Optionor hereby grants the Optionee the exclusive right to lease, on or before the _____ day of _____, 19__, the following: approximately 800 square feet located in the new office building at the corners of Lakeway and King, Bellingham, Washington. 65¢ per ft. per mon.) upon the terms and conditions of the proposed lease agreement that shall be attached to and made a part of this option, and initialed by both the parties hereto for purposes of identification. In the event the Optionee exercises his option within the specified time, the consideration hereinbefore stated shall be credited him by applying the sum toward the payment of the initial month's rent. If the Optionee fails to exercise the option, the amount of the consideration shall be retained by the Optionor as satisfaction in full for holding the property for the Optionee. However, the Optionor shall make no additional demands upon the Optionee and the agreement shall be declared null and void and of no further effect. This option to lease may be exercised at any time prior to the _____ day of _____, 19__ at the offices of the Optionor upon the Optionee giving written

notice to the Optionor of his intention to exercise the option.

/s/ R. Wayne Benson
Optionor

/s/ Glen Friedl          /s/ Gene Rorvig
Optionee                    Optionee

Plaintiffs' exhibit 4 (also defendants' exhibit 19).

The foregoing agreements were admitted into evidence without objection. `

Benson appeals from the entry of the judgments against him. Friedl and Rorvig cross–appeal claiming that the trial court erred in taking the issue of damages for the claimed breach of an option to purchase real estate from the jury and erred in entering the order remitting a portion of the damages.

Three issues are presented by the appeal and cross appeal.

## ISSUES

ISSUE ONE. Was the statute of frauds satisfied as to the new lease agreement?

ISSUE TWO. Was the statute of frauds satisfied as to the option to purchase agreement?

ISSUE THREE. Was reversible error committed in connection with the jury's assessment of damages against Benson, or in connection with the trial court's remittitur of a part of the damages?

## DECISION

ISSUE ONE.

CONCLUSION. As to the new lease agreement, the parties complied with the statute of frauds.

The basic legal issue presented in connection with the agreement to lease is whether or not it complied with the statute of frauds. We hold that as a matter of law the parties' actions did comply with the statute. However, we view the issue somewhat differently than did counsel in

their appellate briefs.[2] The trial court's decision to let the case go to the jury, however, will be sustained on any appropriate ground within the pleadings and proof. *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 595, 446 P.2d 200 (1968); *State v. Fritz,* 21 Wn. App. 354, 364, 585 P.2d 173 (1978).

▇ An agreement to execute a lease is within the statute of frauds. *National Laundry Co. v. Mayer,* 79 Wash. 212, 216, 140 P. 393 (1914); 37 C.J.S. *Frauds, Statute of* § 111, at 602 (1943).

Agreements to lease for a period exceeding 1 year come within the purview of two statutes of frauds, RCW 19.36-.010, which provides that

> any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, . . . that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof; . . .

and RCW 64.04.010 which provides that "[e]very conveyance of real estate, or any interest therein, . . . shall be by deed."[3] *Central Bldg. Co. v. Keystone Shares Corp.,* 185 Wash. 645, 648, 56 P.2d 697 (1936).

---

[2]Appellants' brief contains considerable discussion of the jury instructions given and refused by the trial court. The appellate record, however, contains no showing of any exceptions by Benson to any of the instructions given or not given as required. Appellate review is, therefore, denied. *State v. Louie,* 68 Wn.2d 304, 312, 413 P.2d 7 (1966).

All of the appellate briefs discuss the doctrine of part performance as taking a case out of the statute of frauds. Since we hold that the agreement to lease was taken out of the statute of frauds as a matter of law on a different basis, it is unnecessary to address whether part performance could also have taken this agreement out of the statute of frauds.

It should be noted that we are without benefit of a transcript of Benson's challenge to the sufficiency of the evidence at the close of plaintiffs' case, or of the basis of same.

[3]Also pertinent to the lease is RCW 59.04.010:

"Tenancies from year to year are hereby abolished except when the same are created by express written contract. Leases may be in writing or print, or partly in

██ The purpose of the statute of frauds is, of course, to prevent fraud. *Miller v. McCamish*, 78 Wn.2d 821, 828, 479 P.2d 919 (1971). It has also been stated that its purpose is to remove uncertainty and prevent imposition through the assertion of unfounded and fraudulent claims by requiring that a memorandum or writing be made of the terms of certain contracts or bargains enumerated in the statute; and it follows that the statute is satisfied or, as is often stated, a contract or bargain is taken out of the statute by making and executing a memorandum or memoranda which, taken together, are sufficient to meet the requirements of the statute. 72 Am. Jur. 2d *Statute of Frauds* § 285, at 805 (1974).

A memorandum or memoranda of an agreement for a lease, in order to satisfy the statute of frauds, must embody all of the essential and material parts of the contemplated lease with sufficient clarity and certainty to show that the minds of the parties have met on all material terms and with no material matter left for future agreement or negotiation. 72 Am. Jur. 2d *Statute of Frauds* § 341, at 865 (1974). As held in *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc.,* 51 Wn.2d 685, 687, 321 P.2d 266 (1958):

> The rule relating to the sufficiency of memoranda as stated in 37 C.J.S. 666, § 181, is:
> "Thus the note or memorandum must disclose the subject matter of the contract . . .; the parties thereto . . .; the promise or undertaking . . .; the terms and conditions . . .; and, in some but not all jurisdictions, the price or consideration."

In the present case, reading the quoted exhibits 4 and 6 together, and doing so in light of the foregoing rules, we find the following.

The subject matter of the contract: 800 to 850 square feet of space in the office building was being built by Benson on the corner of Lakeview and King Streets in Bellingham, Washington.

---

writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals."

The parties: Friedl and Rorvig were the optionee–lessees and Benson was the optionor–lessor.

The promise or undertaking: Benson agreed to lease the office space to Friedl and Rorvig.

The terms and conditions: The lease was for a 10–year term with an option to renew for an additional 10 years. The agreements were both prepared by Benson. Exhibit 4, particularly, was for Benson's benefit in that it was to assist him in financing his new office building. Thus the agreements must be construed most strongly against him. Benson did not provide a beginning date for the lease referred to in these agreements; therefore, Friedl and Rorvig were entitled to commence the new lease a reasonable time after the completion of the building.

The price or consideration: Friedl and Rorvig were to pay Benson the prevailing rate for the space not to exceed $0.65 net per square foot.

It is thus apparent that exhibits 4 and 6 contained all of the essential and material parts of the promised new lease and satisfied the statute of frauds. The remaining details could be established by parol. 37 C.J.S. *Frauds, Statute of* § 181, at 668 (1943); *Wright v. Seattle Grocery Co.*, 105 Wash. 383, 177 P. 818 (1919). The fact that the parties contemplated later execution of a formally integrated and mutually executed writing was not a condition precedent *to* Benson's obligation on the agreement to lease. *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc., supra* at 688; *Pettaway v. Commercial Automotive Serv., Inc.*, 49 Wn.2d 650, 654, 306 P.2d 219 (1957). Substantial evidence of an agreement to lease was produced. Therefore, the trial court did not err by permitting the issue of the existence of the promise to lease and the issue of damages for Benson's claimed breach of the agreement to lease to go to the jury.

Issue Two.

Conclusion. As to the option to purchase the new building claimed by Friedl and Rorvig, the trial court did not err in dismissing that aspect of the case as not being in compliance with the statute of frauds; moreover, the trial court

correctly concluded that there was insufficient evidence of such an option to sustain a recovery on that basis.

The rules stated in connection with Issue One, above, also pertain to agreements giving an option to purchase real estate. 37 C.J.S. *Frauds, Statute of* § 117, at 608 (1943); *Woolen v. Sloan,* 94 Wash. 551, 162 P. 985 (1917).

Exhibit 4 did not mention an option to purchase. Exhibit 6 did refer to it, but referred to the purchase price only as a "price to be determined." Without going past that, it is apparent that neither of these signed writings contains all essential and material parts of an option to purchase real estate sufficient to remove it from the statute of frauds. 72 Am. Jur. 2d *Statute of Frauds* § 341, at 865 (1974); *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc., supra* at 687. "A writing is insufficient where it discloses that any of the material terms of the agreement are left open to be settled by future conferences between the parties; in such a case there is no complete agreement." 37 C.J.S. *Frauds, Statute of* § 195, at 682 (1943). *Accord, South Sound Nat'l Bank v. Meek,* 14 Wn. App. 577, 580, 544 P.2d 25 (1975).

■ Nor can we say that part performance by Friedl and Rorvig took the option to purchase out of the bar of the statute of frauds as they contend. As to this, *Miller v. McCamish,* 78 Wn.2d 821, 828–29, 479 P.2d 919 (1971) holds:

> As evidenced by the test required in this state to successfully assert part performance, the court's overriding concern *is precisely directed toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement:*
>> The first requirement of the doctrine that part performance of an oral contract exempts it from the provisions of the statute of frauds is that the contract be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract. . . .
>> A mere preponderance of the evidence is not sufficient. If the evidence leaves it at all doubtful as to whether or not a contract was entered into, the court will not decree specific performance.

. . .

Another requirement of the doctrine . . . is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient.
(Citations omitted.) *Granquist v. McKean,* 29 Wn.2d 440, 445, 187 P.2d 623 (1947).

At the time instructions were being settled, the trial court posed its concern about submitting the option to purchase issue to the jury thusly:

THE COURT: I don't have any doubts that the option had been discussed, but my question is whether there is sufficient definiteness in terms of the option to justify specific performance, which it still could have been, or for a jury to award damages for breach.

Following argument of counsel, the trial court ruled that there was insufficient evidence, written or oral, of the essential and material parts of the option to purchase the new building and did not allow that issue to go to the jury. We have carefully reviewed the entire record presented and agree.

Furthermore, where part performance is relied upon to take an agreement such as an option to purchase out of the statute of frauds, "the burden is imposed upon the party pleading the part performance to show acts unequivocally referring to, and resulting from, that agreement—acts such as would not have been done unless with a direct view to the performance of that very agreement." *McKay v. Calderwood,* 37 Wash. 194, 198, 79 P. 629 (1905). *Accord,* 73 Am. Jur. 2d *Statute of Frauds* § 406 (1974). The surrender of the existing lease by Friedl and Rorvig, and their moving out of Benson's building where they had officed were not such acts.

ISSUE THREE.

CONCLUSION. Neither party has shown that reversible error was committed either in connection with the computation of damages (as urged by Benson) or with the remittitur ordered by the trial court (as argued by Friedl and Rorvig).

The essence of the trial court's damage instruction was as follows:

> If your verdict is for the plaintiffs then you must determine the amount of money which will reasonably and fairly compensate the plaintiffs for such damages as you find were proximately caused by the defendant's breach of contract.
>
> If you find for the plaintiffs your verdict should compensate the plaintiffs for any loss of earnings from their insurance business resulting from defendant's breach.

Instruction No. 9 (part). The jury verdicts were for the precise earnings that Friedl and Rorvig testified that they had lost.

The record before us shows that much of Friedl's and Rorvig's computations of damages was worked out and presented to the jury and judge on either a blackboard or paper on an easel (referred to in the transcript as "the board") rather than by verbal testimony. The formula showing how the lost earnings were computed was not introduced into evidence and is not otherwise apparent from the verbatim report of proceedings and exhibits brought to this court by the parties.

■ Thus, much of the factual basis of the jury's award of damages against Benson and for the trial court's order remitting a portion of those damages is not before us. We will therefore not interfere with either of those determinations. *Chase v. Department of Labor & Indus.*, 36 Wn.2d 518, 219 P.2d 111 (1950); *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 501–02, 125 P.2d 681 (1942). *See Fuller v. Friedman*, 135 Wash. 116, 118, 237 P. 293 (1925). In this situation, we presume that the evidence supported both the jury's determination of damages and the trial

court's remittitur of a portion thereof. *Chase v. Depart-ment of Labor & Indus., supra.*
Affirmed.

SWANSON and DORE, JJ., concur.

Reconsideration denied March 19, 1980.