[No. 6371–2–III.   Division Three.   October 22, 1985.]

CHAS. SAUNDERS, ET AL, *Appellants,* v. GEORGIA ANN CALLAWAY, *Defendant,* KATHLEEN NORRIS, *Appellant,* CLARA CALLAWAY, ET AL, *Respondents.*

*Edward G. Cross, Dennis W. Morgan,* and *Cross & Morgan,* for appellants Saunders.

*Frank J. Gebhardt* and *Feltman, Gebhardt, Eymann, Jones & Montgomery,* for appellant Norris.

*Mark W. Davis* and *Curran, Kleweno & Johnson, P.S.,* for respondents.

THOMPSON, J.—The Saunders,[1] as lessees, appeal the dismissal of their action to enforce a right of first refusal. Kathleen Norris appeals the trial court's ruling in the same

---

[1]Reference to the Saunders includes Donald A. and Lavonne I. Saunders as well as Charles and Loma A. Saunders.

action invalidating a real estate contract, lease, and "first right and option" agreement. We affirm.

In 1969, George B. Callaway died testate, leaving his wife Clara, *inter alia,* a life estate in undivided one–half interests of section 6 and the west half of section 7, township 17, North, Adams County, Washington. Paragraphs 3 and 7 of the will devised remainder interests in the subject property equally to George's named children, Georgia Ann and Eugene Callaway, subject to Clara's life estate.

Paragraph 10 of the will provided:

> *It is my desire that the property* received by my children named in paragraph 3 *be not sold unless it is absolutely necessary or unless both of the children* therein named *agree* that the same be sold and it is further my desire that when both my wife and I are deceased that my son Eugene A. Callaway be given the first opportunity to rent the real property devised herein if he chooses to make farming his occupation.

(Italics ours.)

In 1976, Clara, subject to her right to continue to live thereon, leased all cultivated portions of the subject property to the Saunders for a term of 6 crop years, terminating September 1, 1983. The lease provided the lessor would receive one–third of all the crops grown and granted lessee the following right:

> 4. RIGHT OF FIRST REFUSAL: The Lessor does hereby grant unto the Lessee the right of first refusal as to the purchase of the above entitled premises. In the event Lessor desires to sell the property during the term of this lease, or any renewal thereof, it is hereby agreed that she shall notify Lessee as to any bona fide offer of purchase received by her. Lessee shall have 30 days in which to meet said offer. In the event that he fails to meet the terms of said offer, Lessor shall be relieved of any further obligation under this provision.

That same year Georgia Ann and Eugene signed a document entitled "Approval and Ratification", which read:

> The undersigned do hereby ratify Farm Lease dated December 1, 1976, in which Clara Callaway is the named Lessor and Donald A. Saunders and Lavonne I. Saun-

ders, husband and wife, and Chas. Saunders and Loma A. Saunders, husband and wife are the named Lessee, the same covering all of the cultivated lands on the following described real property:

In 1977, Clara signed a trust agreement and executed a subsequently recorded quitclaim deed conveying her interest in the subject property to Eugene as trustee. She also signed a general power of attorney naming Eugene as her attorney in fact.

In August 1981, Georgia Ann entered into a real estate contract attempting to sell her remainder interest to Kathleen Norris for $75,000 pursuant to oral negotiations between Clara, Georgia Ann, and Mrs. Norris. The parties also entered into an agreement granting Mrs. Norris the right to lease the property for the life of Clara and Georgia Ann when the Saunders lease expired. Additionally, the parties negotiated and agreed to grant Mrs. Norris a "first right and option" to purchase Clara's and Georgia Ann's interests. No notice of the August 1981 sale was given the Saunders, and neither the lease nor "first right and option" agreements were acknowledged or signed by Eugene.

Although Mrs. Norris knew the Saunders had a lease, she testified she did not know it contained a first right of refusal provision and did not know Clara had conveyed the property pursuant to the 1977 trust agreement. Mrs. Norris paid $20,000 down by August 25, 1981, and made the first $5,000 contract payment December 30, 1982. Charles Saunders discovered the sale of Georgia Ann's remainder interest December 1981, and, after attempting to reach an agreement, filed this action January 4, 1983 to enforce the right of first refusal contained in the original lease.

The complaint named Georgia Ann as defendant and the court later joined Mrs. Norris as codefendant. Mrs. Norris counterclaimed against the Saunders and cross–claimed against Georgia Ann. Clara and Eugene were allowed to intervene as plaintiffs and cross–claimed against the Saunders. Mrs. Norris then counterclaimed against Clara and Eugene.

The trial court (1) dismissed the Saunders complaint awarding costs and statutory attorney fees to Mrs. Norris and Georgia Ann; (2) invalidated the contract and collateral agreements between Georgia Ann, Clara, and Mrs. Norris, granting judgment for Clara and Eugene and assessing costs against Mrs. Norris; (3) granted a $25,000 judgment and costs in favor of Mrs. Norris against Georgia Ann; and (4) dismissed all other claims, counterclaims and cross claims. Mrs. Norris and the Saunders appeal.

The first issue is whether the trial court erred in holding the language in paragraph 10 of the will was mandatory, not precatory, thus prohibiting the children from selling their remainder interests unless absolutely necessary or unless both consented.

When called upon to construe a will, the paramount duty of the court is to give effect to the testator's intent. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985); RCW 11.12.230. Such intention must, if possible, be ascertained from the language of the will itself considered in its entirety, giving effect to every part thereof. *Bergau*, at 435. Where uncertainty arises, general rules of construction and extrinsic facts and circumstances may be admitted to explain the language of the will. *Bergau*, at 436; *In re Estate of Riemcke*, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972).

Although the testator may validly put his intention in the form of a request or recommendation, practical difficulty often arises in determining whether the language is dispositive or merely words of advice which leave to the discretion of another whether or not to adopt such advice. 1 W. Bowe & D. Parker, *Page on Wills* § 5.19, at 210 (1960).

The test is whether or not testator intends, by his language, to control the disposition of his property. If he does, the words in question are testamentary and the instrument is his will, no matter in how mild a form this intention is expressed. Such terms are often said to be mandatory.

(Footnotes omitted.) 1 W. Bowe & D. Parker, § 5.19, at 211.

Although the term "desire" is prima facie not mandatory, particularly in the context of its ordinary meaning, 4 W. Bowe & D. Parker, *Page on Wills* § 30.23, at 146 (1961); *First United Methodist Church v. Allen,* 557 S.W.2d 175, 177 (Tex. Civ. App. 1977), it is often construed as mandatory where it appears from the context of the will to be a clear expression of testator's intention. *First United Methodist Church,* at 177; 4 W. Bowe & D. Parker, *Page on Wills* § 30.22, at 43 (Supp. 1985). *See also Raines v. Duskin,* 247 Ga. 512, 277 S.E.2d 26, 34 (1981); *Marlin v. Kelly,* 678 S.W.2d 582, 588 (Tex. Ct. App. 1984). Moreover, a request to an executor is prima facie intended as a will. 1 W. Bowe & D. Parker § 5.19, at 213.

Here, the trial court ruled Georgia Ann's purported sale to Mrs. Norris was neither absolutely necessary nor consented to by Eugene. This ruling is undisputed, and was conceded at oral argument. The court, referring to *In re Estate of Tooley,* 170 Cal. 164, 149 P. 574 (1915); *Porter v. Tracey,* 179 Iowa 1295, 162 N.W. 800 (1917); and *Peterson v. Damoude,* 98 Neb. 370, 152 N.W. 786, 14 A.L.R. 1238 (1915), ruled the language was directed toward the estate and not necessarily the remaindermen and was therefore mandatory. No evidence to the contrary was presented at trial.

Testator's intentions are determined as of the time of the execution of the will. *Bergau,* at 436. This requires the court to consider all the surrounding circumstances, the objects sought to be obtained, testator's relationship to the parties named in the will, provisions for named parties and the general trend of benevolences as disclosed by the testament. *Bergau,* at 436; *Anderson v. Anderson,* 80 Wn.2d 496, 495 P.2d 1037 (1972). The will discloses George's intent to keep the farm intact and in the family. He directed the executor not to sell unless absolutely necessary or consented to by both remaindermen, and afforded Eugene the opportunity via paragraph 10 to rent the subject property upon Clara's death if he so desired.

Moreover, extrinsic evidence before the trial court

included the fact that the property was an original homestead inherited by George from his father. Although the testator's oral statements were properly omitted, Georgia Ann testified she had on a prior occasion promised her father she would not sell the property. Furthermore, Clara had continually maintained her residence on the farm property while tax and record keeping assistance for the farm's operation was provided by Eugene. Given these circumstances and express provisions in the will, the trial court's conclusion that language in paragraph 10 was mandatory properly gave effect to the entire testamentary scheme. Georgia Ann's attempted sale of the remainder interest was precluded.

We next consider whether the unacknowledged Norris lease and first right and option agreements were valid.

## A
### THE LEASE AGREEMENT

■ Rather than a present lease with term to commence later—a leasehold in futuro—the parties here were merely contracting for a lease. A contract to make a lease for a term of over a year must be acknowledged, *Omak Realty Inv. Co. v. Dewey*, 129 Wash. 385, 225 P. 236 (1924); *Wood v. Sill*, 124 Wash. 377, 214 P. 625 (1923) (alternative holding), since an agreement to execute a lease is within the statute of frauds. *Family Med. Bldg., Inc. v. Department of Social & Health Servs.*, 104 Wn.2d 105, 108, 702 P.2d 459 (1985); *Friedl v. Benson*, 25 Wn. App. 381, 386, 609 P.2d 449 (1980). Two statutes, RCW 19.36.010 and RCW 64.04, apply to agreements to lease for a period exceeding 1 year.

RCW 19.36.010 provides in part:

> any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, . . . that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof; . . .

RCW 64.04.010 provides that "[e]very conveyance of real estate, or any interest therein, . . . shall be by deed: . . ."

A deed to be valid must be in writing, signed by the party bound thereby, and acknowledged. RCW 64.04.020.

■ Moreover, to satisfy the statute, the written memorandum or memoranda must embody all essential and material parts of the contemplated lease with sufficient clarity and certainty to indicate the parties' meeting of the minds on all material terms with no material matter left for future agreement or negotiation. *Friedl,* at 387. Specifically, the writing must disclose (1) the subject matter of the contract; (2) the parties thereto; (3) the promise or undertaking; (4) the terms and conditions; and (5) in some jurisdictions the price or consideration. *Family Med. Bldg., Inc.,* at 108 (citing *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc.,* 51 Wn.2d 685, 687, 321 P.2d 266 (1958)); *Friedl,* at 387–88.

Here, the agreement to execute a lease is void and unenforceable because it was not acknowledged. Additionally, the operative language establishes a term which begins September 1, 1983, and continues for the lives of Clara and Georgia Ann, but contains no provision for other material terms and conditions, particularly rent. For both of the above reasons the lease agreement is invalid.

### B
#### The Right of First Refusal

■ The provision granting Mrs. Norris a "first right and option to purchase" appears to be the grant of a right of first refusal, or preemptive option. A preemptive option contract differs significantly from an ordinary option in that it is

> an agreement containing all essential elements of a contract, the terms of which give to the prospective purchaser the right to buy upon terms established by the seller; but only if the seller decides to sell. The corollary, even if unspoken or unwritten, implies an agreement by the owner that he will not sell to any other party at any more favorable terms—thus its common name—a first right to accept or reject any offer which the promisor may make.

*Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 853–54, 441 P.2d 128 (1968).

An option of this nature must be supported by consideration, but need not be acknowledged. *Phillipp v. Curtis,* 35 Wn.2d 844, 215 P.2d 431 (1950). At the time of its inception, a preemptive contract does not create an interest in land, *Robroy Land Co. v. Prather,* 95 Wn.2d 66, 71, 622 P.2d 367 (1980); therefore, lack of an acknowledgment is not fatal.

The next issue is whether the preemptive option was supported by consideration. Georgia Ann's agreement to grant the option to purchase property she *may* inherit finds its basis in the general rule that the expectation of succession to property, even though uncertain, is transferrable upon adequate consideration. T. Atkinson, *Wills* § 131 (2d ed. 1953); 1 W. Bowe & D. Parker, *Page on Wills* § 16.17, at 794 (1960); 2 A. Corbin, *Contracts* § 415 (1950). Mrs. Norris argues her contract payment amounted to consideration for both the sale and the preemptive option. However, in this instance where the underlying real estate contract was held invalid and the payment returned to Mrs. Norris, no consideration remains to support the option agreement. It therefore also fails under these facts.

Since the option fails for lack of consideration, we need not address whether the trust agreement prohibited the grant of the option, nor whether the remaindermen were bound by their ratification of the Saunders lease since the sale of the remainder interest was precluded by mandatory will language.

Affirmed.

GREEN, C.J., and MCINTURFF, J., concur.