[No. 11612–0–II.   Division Two.   June 21, 1989.]

David A. Hunt, et al, *Respondents,* v. Great Western Savings Bank, *Appellant.*

*Laurie D. Kohli, Jeffrey B. Mahan,* and *George, Hull & Porter, P.S.,* for appellant.

*George W. Schoonmaker* and *Logerwell, Schoonmaker & Berger,* for respondents.

WORSWICK, J.—Great Western Savings Bank appeals a $220,000 judgment, based on a jury verdict in favor of David A. Hunt, arising out of Hunt's claim that the Bank breached a contract to enter into a lease. We agree with the Bank's contention that Hunt's claim was barred by the statute of frauds, and we reverse the judgment and dismiss the action.

In 1985, the Bank became interested in opening a branch in the Tacoma area. Its interest ultimately focused on a former department store building in Lakewood that Hunt wanted to develop as a "mini–mall." In July 1985, both the Bank and Hunt signed a written "option agreement" that purported to set forth basic terms, some specific and some vague and general, of a lease that the Bank might enter into should it receive regulatory approval for a branch. This instrument imposed no obligations on the Bank. It gave the Bank the unilateral right to enter into such a lease should it choose to do so within a 30–day option period. The Bank paid Hunt $800 for the 30–day option. Subsequently, it paid him additional sums for extensions of the option period.

In November 1985, the Bank wrote Hunt advising that it had received regulatory approval and indicating that it desired to "negotiate a ten year lease according to the general terms specified in [the "option agreement"]" (that

instrument called for a 5–year lease). The letter asked Hunt to draft and submit a proposed lease.[1]

In response, Hunt drafted and forwarded a proposed lease. The Bank's attorney reviewed the document, wrote to the Bank suggesting changes, and ultimately conferred with Hunt's attorney who, in due course, caused Hunt to prepare and forward another draft. The Bank was not satisfied with either draft.

Bank representatives met with Hunt in January 1986. Except for unsigned notes made by two Bank employees and an internal report addressed to a senior Bank officer, prepared 2 months later by the Bank employee responsible for the negotiations, nothing that happened at this meeting was recorded in any writing. After this meeting, market conditions caused the Bank to abandon its plans for a Tacoma branch. It abandoned the lease negotiations as well.

It is undisputed that the Bank signed no lease. The issue is whether other writings satisfy requirements of the general statute of frauds that an agreement not to be performed within 1 year be in writing "and signed by the party to be charged therewith." RCW 19.36.010.[2]

A single writing is not essential to satisfy the statute; multiple writings, taken together, will suffice. *Friedl v. Benson*, 25 Wn. App. 381, 609 P.2d 449 (1980). The writing(s) must, however, embody all the material elements of the lease transaction. *Friedl*, 25 Wn. App. at 387.

---

[1]Although Hunt identifies nine documents he relies on, the "option agreement" and this letter are the only documents signed by the Bank and communicated to Hunt.

[2]We need not discuss the impact of the real estate statute of frauds, RCW 64.04.010, .020, inasmuch as the only issue before us is the Bank's liability. We are concerned only with whether the Bank signed a writing satisfying the statute, not with whether Hunt did also. *See In re Estate of Tveekrem*, 169 Wash. 468, 14 P.2d 3 (1932).

Moreover, and of critical importance in this case, it must appear

> from an examination of all the writings that the writing which is signed by the party to be charged *was signed with the intention that it referred to the unsigned writing, and that the writings are so connected by internal reference in the signed memorandum to the unsigned one, that they may be said to constitute one paper relating to the contract.*

(Citations omitted. Italics ours.) *Knight v. American Nat'l Bank,* 52 Wn. App. 1, 5, 756 P.2d 757, *review denied,* 111 Wn.2d 1027 (1988). Also, although not often discussed in cases on this issue, it is axiomatic that the writing(s) must reveal the intent by the signing party to be presently bound. *Cf. Pacific Cascade Corp. v. Nimmer,* 25 Wn. App. 552, 608 P.2d 266 (1980) (expressions of intention do not constitute promises); *see also Saunders v. Callaway,* 42 Wn. App. 29, 708 P.2d 652 (1985).

Except for the internal report, discussed later,[3] the following analysis, based on the applicable legal principles, applies to the documents upon which Hunt relies to satisfy the statute of frauds: (a) The July "option agreement" gave the Bank the sole right to enter into a 5–year lease on terms partly specific and partly requiring further negotiation; (b) The Bank *did not,* by its November letter, exercise the option. It did, however, pay to extend the option period while it attempted to negotiate a 10–year lease with Hunt. Thus, in consideration of the payments, the Bank continued to have the unilateral right to enter into a 5–year lease on the option terms. It never exercised that right; accordingly, the "option agreement" never ripened into a bilateral obligation; (c) Neither of the lease drafts prepared by Hunt was acceptable to the Bank. Except for the internal report, no writing signed by the Bank refers to these drafts in any way. That report indicates that the drafts were unacceptable. The upshot of all this is that the Bank, forgoing its

---

[3]The unsigned notes fulfill no requirements of the statute and prove nothing whatsoever.

unilateral rights under the option agreement, entered into negotiations with Hunt, the results of which were never sufficiently memorialized to satisfy the statute of frauds.

Hunt relies on the Supreme Court opinion in *Family Med. Bldg., Inc. v. Department of Social & Health Servs.*, 104 Wn.2d 105, 702 P.2d 459 (1985) and *Friedl v. Benson supra,* in support of his position. Both cases are distinguishable. The Supreme Court in *Family Medical* was concerned only with whether the absence of a specific agreement on the amount of rent would allow avoidance of the overall agreement to lease. The Supreme Court held that it would not, applying the established rule that, where rent is the only unresolved issue, an agreement to agree on rent is binding. In *Friedl,* the court considered two separate documents. Neither, standing alone, contained all of the elements of a lease but they did when considered together. Neither document made a specific internal reference to the other. However, both documents were signed by all of the parties. Significantly, on facts similar to this case, the *Friedl* court also refused to enforce an alleged option to purchase because it was unable to find that the writings were complete, left nothing to be settled by future negotiations, and thus complied with the statute of frauds. *Friedl,* 25 Wn. App. at 389.

The basis upon which the internal report was allowed into evidence is not clear, and the only case we have found discussing such documents is the Court of Appeals opinion that preceded the Supreme Court's review in *Family Med. Bldg., Inc. v. Department of Social & Health Servs., supra.* The discussion is limited to the following:

> Seventh, the State assigns error to the court's admission of interagency memoranda tending to show individual state employees expected the lease would be renewed. It argues the introduction of memoranda, coupled with the wording of the court's instructions, allowed the jury to consider the parties' subjective intent, contrary to *Everett v. Estate of Sumstad,* 95 Wn.2d 853, 855, 631 P.2d 366 (1981). We disagree. The memoranda were properly admitted because they formed part of a process

which was ultimately communicated to FMB, or because they were evidence of G.A.'s ratification of the department's conduct.

*Family Med. Bldg., Inc. v. Department of Social & Health Servs.,* 37 Wn. App. 662, 674, 684 P.2d 77 (1984), *aff'd,* 104 Wn.2d 105, 702 P.2d 459 (1985). Presumably Hunt considered the report helpful because it was signed by a Bank official and it purported to state that certain agreements had been reached at the January meeting. On the other hand, the author of the report insisted throughout that the Bank never entered into a lease, and that the only formal agreement between Hunt and the Bank was the option agreement. It is evident that, for whatever purposes such a document might be received in evidence, this report did not show any intent by the Bank to be presently bound to anything.

Finally, we disagree with Hunt's contention that part performance removed this transaction from the statute.[4] There was no delivery and assumption of actual and exclusive possession and no rent was paid. *Powers v. Hastings,* 93 Wn.2d 709, 612 P.2d 371 (1980). Also, no improvements devoted exclusively to the Bank's potential use of the property were made. *Williams v. Fulton,* 30 Wn. App. 173, 632 P.2d 920, *review denied,* 96 Wn.2d 1017 (1981).

Reversed and dismissed.

PETRICH, A.C.J., and REED, J., concur.

Reconsideration denied September 12, 1989.

Review denied at 113 Wn.2d 1037 (1990).

---

[4]The doctrine of promissory estoppel, injected into the case sua sponte by the trial judge, is inapplicable. A promise is the sine qua non of promissory estoppel. *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 616 P.2d 644 (1980). The Bank never promised anything.