2013 JUL -8 AM 10: 44


**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In Re the Estate of | ) | NO. 68109-5-I |
| | ) | |
| EDDIE KANYER | ) | DIVISION ONE |
| | ) | |
| Deceased. | ) | |
| | ) | |
| KEVIN KANYER, | ) | UNPUBLISHED OPINION |
| Appellant, | ) | |
| v. | ) | FILED:  July 8, 2013 |
| | ) | |
| MARY ELLEN KANYER, | ) | |
| | ) | |
| Respondent. | ) | |

LAU, J. — This case involves a son's challenge to a trial court order confirming his mother's actions taken as trustee and sole beneficiary of two trusts that held marital community assets.  Where, as here, a trust agreement's meaning and intent are unambiguous, the court enforces it as written.  We affirm the trial court and award fees under RCW 11.96A.150 subject to compliance with RAP 18.1.

## FACTS

### The Trust Agreement

Eighty-six-year-old Mary Ellen Kanyer is Eddie Kanyer's surviving spouse. Eddie passed away on August 9, 2000.  They have three surviving adult sons—Kevin, Jeffrey, and Robert.[1]

---

[1] For clarity, we refer to the Kanyer family members by their first names.  A fourth son, Rodney, passed away in 1992.

In April 2000—about 4 months before Eddie died—he and Mary Ellen created a revocable living trust. Its terms are governed by the "Joint Revocable Living Trust Agreement of the Kanyer Living Trust" ("Trust Agreement"). Eddie and Mary Ellen were named grantors and trustees of the trust.

The Trust Agreement provides that upon either spouse's death, the surviving spouse shall divide the trust estate into a Family Trust and a Survivor Trust.[2] Article IX directs the survivor (here Mary Ellen) to fund the Family Trust with "an amount of property" equal to the deceased spouse's (here Eddie's) separate property and his half interest in any community property. No specific assets were required to fund the Family Trust. The trustee was authorized to fund the Family Trust by allocating "property in cash or in kind (including undivided interests), or part in cash and part in kind" equal to Eddie's half interest in community property. Article IX also directs Mary Ellen to fund the Survivor Trust with her own separate property and her half interest in community property.

Article X provides that as the surviving spouse, Mary Ellen is the primary beneficiary of the Survivor Trust and its purpose is "to provide for . . . her health, education, support, and maintenance." The Trust Agreement permits her to use, distribute, and deplete the Survivor Trust's assets even if such use exhausts the trust. Similarly, under Article XI, Mary Ellen is the Family Trust's sole beneficiary with the right to use its assets for her "health, education, support, and maintenance" during her

---

[2] The Trust Agreement also contemplated a third trust (the Marital Trust) to be funded if there was a tax advantage in doing so. Because there was no tax advantage, the Marital Trust was never funded.

lifetime. Upon Mary Ellen's death, any assets remaining in the Survivor Trust become Family Trust assets to be divided between Mary Ellen and Eddie's children.

As trustee of both the Survivor and Family Trusts, Mary Ellen is authorized under Paragraph 18.1 to "sell, dispose of, invest, reinvest, exchange and manage the assets of the trust estate . . . ." Paragraph 18.3 authorizes her to dispose of property for cash or credit on any terms she deems advisable and "to manage, develop, improve, exchange, partition, change the character of, abandon property or any interest therein, or otherwise deal with property." Paragraph 19.1.7 authorizes her to consolidate or merge the Family and Survivor Trusts.

The Trust Agreement provides, "Every action made in good faith by Trustee in the exercise of any power, authority, judgment or discretion conferred hereunder (including without limitation, disclaimers, releases, or elections with respect to taxes) shall be conclusive and binding upon all persons interested in the assets of any trust established hereunder." The Trust Agreement also provides for revocation and amendment:

> 4.1. Revocation/Withdrawals. We reserve the right by written instrument signed by us as Grantors and filed with our Trustee to revoke this Agreement at any time or to withdraw from the trust estate, discharged of the trust, all or any part of the principal and accumulated income of the trust upon satisfying all sums due to our Trustee and indemnifying our Trustee to our Trustee's reasonable satisfaction against liabilities lawfully incurred in the administration of this trust.
> 4.2. Amendment. We reserve the right to alter or amend this Agreement at any time, by written instrument signed by us as Grantors and accepted by our Trustee.
> 4.3. Rights Personal to Us. The rights of revocation, withdrawal, alteration and amendment reserved by us must be exercised solely by us and may not be exercised by any other person, including any agent, guardian or conservator. However, if one of us is deceased or if during our joint lifetime one of us is incapacitated to the extent that he or she is unable to manage business affairs, the other Grantor acting alone may exercise the foregoing rights of

revocation, withdrawal, alteration and amendment but only and solely as to his or her granted and contributed share of community and separate property.

The Dispute

Mary Ellen and Eddie owned an Alki condominium in West Seattle where Mary Ellen currently resides and a small cabin built on beach property in Indianola, Washington. When Eddie died in 2000, the condominium's value was $260,000 and the Indianola property's assessed value was $273,850.[3]

Eddie had no separate property when he died. Mary Ellen funded the Family Trust with the condominium as the equivalent of Eddie's half interest in the community property. Mary Ellen funded the Survivor Trust with the remaining community property—a $158,408 brokerage account—and the Indianola property. At the time, Mary Ellen believed the Indianola property was her separate property because she held title in her name only since inheriting it in 1974 from her mother. Mary Ellen and Eddie later executed a community property agreement in 1965. This agreement directed that any property then owned or after acquired would be considered community property.

In March 2000, shortly before executing the Trust Agreement, Mary Ellen and Eddie allowed their son Kevin to move into the Indianola beach cabin. They allowed Kevin to live in the cabin because a recent divorce left him "essentially homeless and in need of help." Mary Ellen and Eddie executed the Trust Agreement shortly after Kevin moved into the cabin. The Trust Agreement's article XI granted a first right of refusal to Kevin:

---

[3] The tax assessment was the only evidence before the trial court as to the Indianola property's value. At summary judgment, Kevin disputed the valuation but provided no evidence to the contrary.

> After our death, and after the payment and distributions authorized in the preceding Articles, the remaining assets of the trust shall be referred to as the Family Trust.
>
> . . . .
>
> We give the rest and remaining property of the Family Trust to our children as their separate property when they each attain the age of twenty-one (21) or when they complete their second year of college. To our son, KEVIN B. KANYER, we give the right of first refusal to receive our cabin as his fair share. Such right shall be personal to our son and shall not pass per stirpes. . . .

The Trust Agreement made clear that this "right of first refusal" created in Kevin no vested interest in the property prior to its actual distribution to him on Mary Ellen's death:

> No beneficiary shall have any assignable interest in any trust created hereunder or in the income therefrom. . . . No beneficiary shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in the trust or the income produced thereby prior to its actual distribution by the Trustee to the beneficiary or to another for the benefit of the beneficiary in the manner authorized herein.

Kevin lived rent free for six years in the cabin until it was destroyed by fire in July 2006. Mary Ellen gave Kevin a portion of the $240,968.48 fire insurance proceeds to cover alternate housing for a year and destroyed personal property. Mary Ellen then decided to rebuild on the Indianola property with son Jeffrey's assistance. She divided the property into two lots. Mary Ellen sold the vacant lot adjacent to the cabin to Jeffrey and his wife, Debra, for $100,000. She used these proceeds and the leftover insurance proceeds to fund the construction of a new 2,300 square-foot home on the remaining lot. Jeffrey and Debra were involved in the construction and contributed resources to help Mary Ellen finance the project.

During construction, Mary Ellen amended the Trust Agreement at least four times.[4] The effect of these amendments eliminated Kevin's first right of refusal to the cabin on Mary Ellen's death. After its construction, "Kevin began to make verbal claims that the new house was his own based upon the language contained in the Trust Agreement about a 'right of first refusal to receive our cabin as his fair share' after the death of his parents." In 2010, Mary Ellen filed a Trust and Estate Dispute Resolution Act (TEDRA) petition, chapter 11.96A RCW, to seek a declaration that the Indianola property was her separate property. She also sought an order declaring that the Family Trust's irrevocable provisions pertaining to Eddie's assets did not include the Indianola property or certain other assets. Finally, she sought a declaration affirming her actions as trustee and authority to transfer certain undivided interests in her home to herself as the trustee of her revocable living trust.

Mary Ellen moved to dismiss the TEDRA action without prejudice. Kevin opposed dismissal, pointing to his yet unresolved counterclaims. The trial court denied Mary Ellen's dismissal motion.

Meanwhile, Mary Ellen sold the new house to Jeffrey and Debra for its appraised value of $720,000, minus commissions that would otherwise be owed and a "gift" to Jeffrey and Debra of 50 percent of the net value, i.e. $338,400. Mary Ellen ultimately received $338,400 cash for the property. According to Mary Ellen, the 50 percent "gift" of the net value was her "recognition for what she believes is a portion of the value that Jeff and Debbie contributed to the project." Mary Ellen sold the house to Jeffrey and

---

[4] Only the third and fourth amendments were part of the record below. The second amendment was partially described in the third amendment.

Debra because her "liquidity [was] dwindling" and she needed the cash to support herself. The purchase and sale agreement states, "[Mary Ellen] . . . independently made the decision to sell/gift the Property to [Jeffrey and Debra] for her own well-being and exclusive benefit, and for the purpose of creating funds for [Mary Ellen's] own health, education, and support." Jeffrey and Debra also agreed to permit Mary Ellen to use the house for her continued enjoyment.

Kevin moved for partial summary judgment on Mary Ellen's claim that the Indianola property was her separate property. He argued that the 1965 community property agreement clearly indicated that Mary Ellen and Eddie intended all property, including the Indianola property, to be community property and, thus, no material issues of fact remained on this issue. Mary Ellen also moved for summary judgment, asking the court to confirm her actions as trustee, approve the sale of the Indianola property, and deny Kevin's claims for a formal accounting, removal of Mary Ellen as trustee, and characterization of the Indianola property. In his response to Mary Ellen's summary judgment motion, Kevin stated he "has always acknowledged that the income of the family trust was for [Mary Ellen's] benefit regardless of a first right of refusal set forth in the trust." In his declaration in opposition to summary judgment, he testified, "I have never asserted that the [Indianola] property cannot be sold. The family trust much like the survivor's trust is for [Mary Ellen's] income needs after the death of [Eddie]." Despite those concessions, he opposed summary judgment because he alleged that sale of the property to Jeffrey constituted a "conflict of interest" that affected his "remainderman interest." He also urged the court to order a formal accounting to

determine whether Mary Ellen demonstrated she needed to sell the property to support herself.

On summary judgment, Mary Ellen submitted two expert witness declarations. Estate planning and business attorney Thomas Keller testified that he reviewed the Kanyer Trust Agreement. He described living trusts generally:

> The Kanyer Living Trust is a revocable inter vivos trust. Such a trust allows spouses to retain control over their assets during their lifetimes, while providing for asset management and distribution when the spouses pass away. This type of trust is commonly used to avoid probate and to take advantage of federal estate tax savings opportunities. During their lifetimes, the spouses usually serve as both the co-trustees and the beneficiaries of the trust. They enjoy all the income from the trust assets. They retain the power to add or remove assets from the trust. They retain full power to modify or revoke the trust during their lifetimes. The spouses have the power to limit or modify the terms of the trust and relieve the trustee of any duties imposed by statute.

Keller also described the specific Kanyer Trust Agreement:

> Under the terms of the Kanyer Living Trust upon the death of the first spouse, the trustee may make non-prorata distributions of assets to fund the trusts created by the first death. This means that the trustee can distribute an equal value of the assets to fund a particular trust under a specific formula contained in the trust provisions. The trustee does not need to distribute a particular asset or a portion of each asset to satisfy the distribution requirement. A non-prorata distribution is also authorized by statute, RCW 11.98.070, and by case law.

In Keller's opinion, it was permissible to fund the Family Trust with the condominium based on its value at the time. This allowed Mary Ellen to hold title to a single, nonincome producing asset with potential for growth appreciation, allowing the asset to grow tax free for the remaindermen while still providing a home for Mary Ellen. According to Keller, this funding was consistent with the Trust Agreement and with trust law. Keller clarified that the trust provisions, not the assets themselves, became fixed on Eddie's death. Thus, "[w]hile Mary Ellen cannot change the Family Trust provisions

-8-

as it pertains to Eddie's interest, she can change the form and deplete the value of the assets. For example, the identity of the individual assets in the trust can increase or decrease by substituting or selling the assets."

Certified public accountant Richard B. Head also reviewed the Kanyer Trust Agreement. His declaration testimony corroborated Keller's analysis and reached the same conclusion: "It was appropriate to fund the Family Trust with the value of the condo." Head also concluded that any "potential underfunding did not prejudice any remaindermen . . . ." CP 293. Head testified that the trustee "has the power under the Trust Agreement to distribute the interest and the corpus of the Family Trust to the Beneficiary for her maintenance and support. . . . Mary Ellen has been consuming the liquid assets for her maintenance and support over the past 11 years."

The court granted Kevin's motion for partial summary judgment, concluding that the community property agreement converted the Indianola property to a community asset.[5] The court also noted that the Indianola property's characterization as community property did not affect Mary Ellen's actions as trustee:

> The parties dispute whether Mary Ellen had the authority to put the Alki condominium into the Family Trust rather than the Indianola Beach Property. At the end of the day, it does not matter. Although Paragraph 11.4.1 shows that Eddie and Mary Ellen intended to put the cabin into the Family Trust, Paragraph 4.3 gives Mary Ellen the authority to modify the Trust Agreement after Eddie's death as to her share of any community property. The effect of this provision is that she has the right to put her interest in the Indianola Beach Property into the Survivor's Trust. Once in the Survivor's Trust, she could gift her half interest to her son Jeffrey—even if Paragraph 11.4.1 remained unchanged. And under Paragraph 11.1, she has the discretion and thus the power to sell Eddie's half interest to generate cash to support herself. There is nothing in the Trust Agreement prohibiting this sale. As Kevin has to concede, the assets are there for Mary Ellen to dispose of as she deems appropriate.

---

[5] Mary Ellen does not challenge this ruling.

The court granted Mary Ellen's motion for summary judgment dismissal, concluding as a matter of law that "Mary Ellen had the right to make the decision she made regarding this property and this Court finds no ambiguity in the Trust Agreement warranting a trial on Kevin's claim." Kevin appeals.

## ANALYSIS

### Standard of Review

We review summary judgment de novo and consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Bulman v. Safeway, Inc., 144 Wn.2d 335, 351, 27 P.3d 1172 (2001). The nonmoving party cannot rely solely on the allegations in his or her pleadings, on speculation, or on argumentative assertions that unresolved factual issues remain. White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997). Such assertions must be supported by evidence. Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986).

Interpretation of a will or trust instrument is a question of law we review de novo. In re Estate of Curry, 98 Wn. App. 107, 112-13, 988 P.2d 505 (1999). We determine an individual's intent in a trust document by construing the document as a whole, giving effect to each part of the trust instrument. In re Estate of Sherry, 158 Wn. App. 69, 78, 240 P.3d 1182 (2010); Bartlett v. Betlach, 136 Wn. App. 8, 19, 146 P.3d 1235 (2006). Although determining a settlor's intent is generally a question of fact, the interpretation

of a trust provision is a question of law. Sherry, 158 Wn. App. at 76. "'Where the meaning of an instrument evidencing a trust is unambiguous, the instrument is not one requiring judicial construction or interpretation . . . .'" Templeton v. Peoples Nat'l Bank of Wash., 106 Wn.2d 304, 309, 722 P.2d 63 (1986) (quoting 90 C.J.S. Trusts § 161 at 18-19 (1955)). "A trust is ambiguous if it is susceptible of more than one meaning; ambiguity is a question of law." Waits v. Hamlin, 55 Wn. App. 193, 200, 776 P.2d 1003 (1989). Further, "'if the intention may be gathered from [the trust] language without reference to rules of construction, there is no occasion to use such rules, and the actual intent may not be changed by construction.'" Templeton, 106 Wn.2d at 309 (quoting 90 C.J.S. Trusts § 161 at 18-19 (1955)). Accordingly, extrinsic evidence should not be considered where "intent can be derived solely from the four corners of the trust document." Templeton, 106 Wn.2d at 309. "Furthermore, where discretion is conferred upon a trustee with respect to carrying out the provisions of a trust, the exercise thereof is not subject to control by the court except to prevent an abuse of such discretion." Templeton, 106 Wn.2d at 309.

### Request for Trial

Kevin contends that factual disputes required the court to consider oral testimony before it ruled. The record demonstrates that Kevin never requested trial or a hearing. The issue is waived. RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005). Regardless, his argument lacks merit. TEDRA expressly envisions that proceedings to resolve disputed issues in probate cases may be decided on a written record, rather than by trial. RCW 11.96A.100(7) ("Testimony of witnesses may be by affidavit."). The statute also requires parties to request an evidentiary hearing in a

-11-

petition or answer. RCW 11.96A.100(8) ("Unless requested otherwise by a party in a petition or answer, the initial hearing must be a hearing on the merits to resolve all issues of fact and all issues of law."). We have also held that nothing requires a court to resolve disputed fact issues on live testimony in a TEDRA action. Courts may rely instead on affidavits and other written materials as the trial court did here. Foster v. Gilliam, 165 Wn. App. 33, 55, 268 P.3d 945 (2011), review denied, 173 Wn.2d 1032, 277 P.3d 668 (2012) ("It is not necessary that the court hear oral testimony in order to make findings.").[6] We conclude the trial court properly resolved this TEDRA dispute on a written record.

---

[6] Division Three of this court recently discussed the trial court's broad authority in TEDRA matters:

TEDRA is a "grant of plenary powers to the trial court." In re Irrevocable Trust of McKean, 144 Wn. App. 333, 343, 183 P.3d 317 (2008). The trial court's TEDRA authority derives from RCW 11.96A.020(1) and (2) which provides:

(1) It is the intent of the legislature that the courts shall have full and ample power and authority under this title to administer and settle:

(a) All matters concerning the estates and assets of incapacitated, missing, and deceased persons, including matters involving nonprobate assets and powers of attorney, in accordance with this title; and

(b) All trusts and trust matters.

(2) If this title should in any case or under any circumstance be inapplicable, insufficient, or doubtful with reference to the administration and settlement of the matters listed in subsection (1) of this section, the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court.

(Emphasis added.)

The legislature confirmed those powers in RCW 11.96A.060:

The court may make, issue, and cause to be filed or served, any and all manner and kinds of orders, judgments, citations, notices, summons, and other writs and processes that might be considered proper or necessary in the exercise of the jurisdiction or powers given or intended to be given by this title.

In re Estate of Jones, 170 Wn. App. 594, 604, 287 P.3d 610 (2012).

## Challenge to Indianola Property's Sale

Kevin makes three related arguments on appeal. First, he contends that Mary Ellen was required to fund the Family Trust with the Indianola property and to offer him the cabin before selling it to Jeffrey. Second, Kevin complains that Mary Ellen sold the property without an adequate showing of need. Third, Kevin challenges the court's failure to require a formal accounting of trust funds.

### Funding of Family Trust

Kevin specifically argues, "[T]the trust [document] is ambiguous as to whether the beach property was intended solely for the family trust or whether it could be exchanged for other assets to be included in the survivor's trust." Appellant's Reply Br. at 2. We disagree. The trust terms are unambiguous. The Trust Agreement contains no requirement to fund the Family Trust with any specific property. It authorizes Mary Ellen to "satisfy the amount distributable to the Family Trust by allocating property in cash or in kind (including undivided interests), or part in cash and part in kind."

Kevin also claims that Mary Ellen and Eddie intended to fund the Family Trust with the Indianola property. The trial court agreed, based on the Trust Agreement's paragraph 11.4.1, which gives Kevin the "right of first refusal to receive our cabin as his fair share." Even if we assume without deciding that Mary Ellen and Eddie intended this result,[7] the trial court correctly noted, "[A]t the end of the day, it does not matter."

---

[7] We question whether merely referencing the Indianola cabin in the Family Trust provisions shows intent to place the cabin in the Family Trust, especially because Mary Ellen and Eddie apparently believed the property was Mary Ellen's separate property at the time they executed the Trust Agreement, and the Trust Agreement provides that the survivor's separate property goes into the Survivor Trust. Thus, the parties at least contemplated that Mary Ellen would be the survivor and the cabin (which they believed

Regardless of whether the Indianola property was held in the Survivor Trust or the Family Trust, Mary Ellen is the sole beneficiary of both trusts and is entitled to use the income and principal for her support and maintenance during her lifetime. The Trust Agreement conferred on Mary Ellen broad powers to manage or sell the property as she saw fit. Read in its entirety, the Trust Agreement's primary intent is clear: to provide for the surviving spouse.[8] Provision for their sons was plainly secondary. The Trust Agreement specifically contemplates the possibility that no trust assets will remain after Mary Ellen's death. See Clerk's Papers (CP) at 23 (authorizing survivor to exhaust the Survivor Trust); CP at 25 (authorizing survivor to use Family Trust assets for health, education, support, and maintenance "to the extent the assets of the trust estate are sufficient to permit the same"); CP at 25 (authorizing distribution of "residue," "remaining assets," and "rest and remaining property" after Mary Ellen and Eddie's death and after payment of debts and other obligations). Because the Trust Agreement bequeaths the Family Trust remainder to the Kanyer sons only on the death of their parents, the sons' interest, if any, is not ascertainable until that time. The sons' potential interest is also subject to depletion by the expenses and other liabilities Mary Ellen incurs throughout

---

was her separate property) would go into the Survivor Trust. Further, the Trust Agreement provides that upon Mary Ellen's death, the Survivor Trust "shall terminate and all property remaining after payment of [debts, taxes, and other obligations] shall be distributed to Trustee for administration pursuant to the terms of the Family Trust." Thus, had Mary Ellen not sold the cabin, it would have remained in the Survivor Trust and would have been subject to distribution pursuant to the Family Trust provisions (including Kevin's first right of refusal) upon her death. But as explained here, Mary Ellen had the right to sell the property regardless of which trust it was placed in and she properly exercised her discretion as trustee to do so.

[8] Kevin conceded this point below. See Kevin's response to Mary Ellen's summary judgment motion, CP at 350 ("The clear purpose of the trust is designed to benefit [Mary Ellen] for her long term benefit . . . .").

-14-

her life. Kevin acknowledged that his first right of refusal "is not a vested right." Mary Ellen and Eddie clearly intended full access to trust assets for the surviving spouse's lifetime.

The parties agree that Eddie's half interest in community property became irrevocable upon his death. The trial court properly concluded that the Trust Agreement conferred on Mary Ellen full authority to revoke the first right of refusal as to her half interest in the property. Even if the Trust Agreement initially contemplated that the Indianola property be placed in the Family Trust, Mary Ellen could alter that provision to place her half interest in the Survivor Trust and later gift it to Jeffrey. Although Mary Ellen's power to revoke or alter the Trust Agreement was limited to her half interest in community property, as trustee and sole beneficiary, she was authorized to sell Eddie's community interest to provide for her support and maintenance.

Kevin argues for the first time in his reply brief that the "first right of refusal for the beach property . . . [is] a result of consideration paid, and the labors of the Appellant, to maintain and save the beach property." Appellant's Reply Br. at 2. This court does not consider issues argued for the first time in a reply brief. In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). The reply brief is limited to a response to the issues in the response brief. To address issues raised for the first time in a reply brief is unfair to the respondent and inconsistent with the rules on appeal. RAP 10.3(c); State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994). We decline to address this claim.[9]

---

[9] Kevin's argument—raised in his appellate brief and at oral argument—that Mary Ellen was required to offer him the Indianola property before selling it to Jeffrey was not raised below and we decline to consider it here. RAP 2.5(a); Roberson, 156 Wn. 2d at 39. Regardless, the Trust Agreement imposes no such requirement.

Citing Saunders v. Callaway, 42 Wn. App. 29, 708 P.2d 652 (1985), Kevin also argues, "A right of first refusal for purposes of an inheritance is an enforceable preemptive option." Appellant's Br. at 13. But Saunders did not address first rights of refusal contained in a trust or will. Saunders addressed (1) whether a will created a restriction on sale of the subject property by the heirs and (2) whether a "'first right and option to purchase'" contained in a combined real estate contract and lease agreement (not a will) was enforceable. Saunders, 42 Wn. App. at 32-37. The court held that the "first right and option to purchase" was unenforceable because it lacked consideration. Saunders, 42 Wn. App. at 37. Saunders does not apply.

Because the Trust Agreement provisions are clear and Kevin failed to raise any material fact disputes, the trial court properly concluded that Mary Ellen's decisions to fund the Family Trust were proper as a matter of law.

Necessity

Kevin argues that even if authorized to sell the Indianola property to Jeffrey and Debra, Mary Ellen presented no evidence she needed to sell the property for her support and maintenance. Mary Ellen responds that no Trust Agreement provision requires her to show "need" before selling trust principal.

Below, Kevin repeatedly acknowledged that as trustee and sole beneficiary of the Family Trust, Mary Ellen could sell the Indianola property for her health, education, support, and maintenance. See CP at 68 ("I understand that the Indianola property . . . may or may not be needed to financially care for my mother in the future."); CP at 72 ("[The family trust] is there for the benefit of my mother first and only my mother."); CP at 104 ("I recognize that my mother may or may not need to sell this

-16-

property for her health and maintenance needs."); CP at 341 ("Kevin Kanyer has always acknowledged that the income of the family trust was for [Mary Ellen's] benefit regardless of a first right of refusal set forth in the trust."); CP at 350 ("The clear purpose of the trust is designed to benefit [Mary Ellen] for her long term benefit . . . ."); CP at 353 ("I have never asserted that the [Indianola] property cannot be sold. The family trust much like the survivor's trust is for [Mary Ellen's] income needs after [Eddie's death]"); RP (Nov. 18, 2011) at 11 ("That first right of refusal would disappear if there was a need to sell that property for health, education or support."); RP (Nov. 18, 2011) at 37 (admitting that Mary Ellen has "absolute discretion" to decide whether something is for her health, education, support, and maintenance).

Despite these acknowledgements, Kevin claims that "for Survivor's health, education, support, and maintenance" means necessity must be shown. The Trust Agreement imposes no burden on the survivor to show necessity. It provides:

> The Trustee in making payments committed to its discretion to or for the benefit of a beneficiary shall take into consideration any other income, support, or property available to the beneficiary . . .; but the extent to which such other income, support or property must first be utilized by the beneficiary shall be in the absolute discretion of Trustee.

(Emphasis added.) If Mary Ellen desires to sell trust property to provide for her care and maintenance, the Trust Agreement authorizes her to make this discretionary determination. See Holmes v. Holmes, 65 Wn.2d 230, 233-34, 396 P.2d 633 (1964) (reaching a similar conclusion when language in a will gave testator's property to his wife "to use for her care and maintenance as she finds necessary"); Peoples Nat'l Bank of Wash. in Seattle v. Jarvis, 58 Wn.2d 627, 630, 364 P.2d 436 (1961) (remaindermen challenged trustee's decision to invade trust principal to pay certain bills incurred in

beneficiary's care, maintenance, hospital, medical, nursing, and housekeeping services, arguing that "there is no necessity for invading the corpus [of the trust assets] at this time"; court rejected this claim, emphasizing that "where discretion is conferred upon a trustee, the exercise thereof is not subject to control by the court except to prevent an abuse of such discretion." (Alteration in original.) Mary Ellen's actions here fell well within her powers conferred by the Trust Agreement as trustee.

### Accounting

Kevin argues that the trial court is required to "first determine the value of the entire community estate before it determines whether the substitution of [the Alki condominium for the Indianola beach property] is appropriate" under the Trust Agreement. Appellant's Br. at 10. Specifically, he claims that he is entitled to a full accounting to show whether Mary Ellen underfunded the Family Trust.

RCW 11.106.020 requires trustees to mail or deliver itemized statements to each adult income beneficiary on an annual basis. Kevin is not an income beneficiary. But any beneficiary, including one holding only a present interest in the remainder of a trust, may petition the court for an accounting. RCW 11.106.040; Nelsen v. Griffiths, 21 Wn. App. 489, 493, 585 P.2d 840 (1978). "[A]n instrument creating a trust may in some cases relieve the trustee of the duty of making a formal accounting" so long as such relief from duty is "expressly and unambiguously declared by the settlor." State v. Taylor, 58 Wn.2d 252, 261, 362 P.2d 247 (1961). Division Three of this court discussed relief from the duty to make a formal accounting in In re Estate of Hitchcock, 140 Wn. App. 526, 531, 167 P.3d 1180 (2007):

RCW 11.97.010 allows any trustor to include provisions in the trust that relieve the trustee from any or all the duties imposed by RCW 11.106.020, and from provisions of the probate statutes and the principal and income act, chapter 11.104A RCW. Significantly, while RCW 11.97.010 allows any trustor to include provisions in the trust that relieve the trustee from compliance with RCW 11.106.020, RCW 11.97.010 does not list any other provisions of the trustees' accounting act, chapter 11.106 RCW, including RCW 11.106.040.

Significantly, RCW 11.106.040 states:

At any time after the later of one year from the inception of the trust or one year after the day on which a report was last filed, any settlor or beneficiary of a trust may file a petition under RCW 11.96A.080 with the superior court in the county where the trustee or one of the trustees resides asking the court to direct the trustee or trustees to file in the court an account. At the hearing on such petition the court may order the trustee to file an account for good cause shown.

Hitchcock, 140 Wn. App. at 531.

The Trust Agreement expressly relieved the trustee of any duty to make a formal accounting to anyone except beneficiaries entitled to current distributions of trust income or principal. As discussed in Hitchcock, however, beneficiaries may proceed under RCW 11.106.040 when seeking a statement of accounts from the trustee despite any waiver provisions. Hitchcock, 140 Wn. App. at 531. The waiver provisions do not affect the application of RCW 11.106.040 because this provision is not included in the list contained in RCW 11.97.010. Hitchcock, 140 Wn. App. at 531. However, such a beneficiary is only "entitled to have the trial court determine in the exercise of its discretion whether or not such an accounting will be authorized and required." Nelsen 21 Wn. App. at 496 (construing predecessor statute to RCW 11.106.040).

Here, the trial court considered Kevin's accounting request at summary judgment. The court properly exercised its discretion when it required no accounting. The court considered the community estate's undisputed value when Eddie died. Aside from questioning the Indianola property's value—for which he provided no contradictory

evidence—Kevin never substantively challenged Mary Ellen's accounting of the family's assets. Whether Mary Ellen underfunded the Family Trust by placing only the condominium in the trust is not relevant to Kevin's claim about the Indianola property. Kevin also challenges the expert's conclusion that Mary Ellen properly funded the Family Trust with the condominium. He argues that the conclusion "did not take into consideration other assets available to Mary Ellen." Appellant's Br. at 11. But Kevin's conclusory statements are insufficient to raise a material fact that warrants a trial. White, 131 Wn.2d at 9. After a moving party has submitted adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and setting out the existence of material fact. Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 377, 972 P.2d 475 (1999). Kevin's accounting claim fails.

Attorney Fees and Costs

Mary Ellen requests an award of attorney fees under RCW 11.96A.150(1), which provides:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1).

We conclude that an award of fees against Kevin in favor of Mary Ellen under RCW 11.96A.150 is warranted. Mary Ellen incurred costs defending the trial court's

decision and prevailed on appeal. Kevin raises no meritorious issue on appeal, and Mary Ellen's trust assets should not be further depleted by the expense of appellate attorney fees. We award Mary Ellen fees on appeal subject to compliance with RAP 18.1.

## CONCLUSION

We affirm the trial court in all respects and grant Mary Ellen's request for attorney fees on appeal.

WE CONCUR: